Filed 8/25/16  R.L. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| R.L.,<br><br>        Petitioner,<br><br>                v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>        Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Real Party in Interest. | F073833<br><br>(Super. Ct. No. 14CEJ300350-1-6)<br><br><br>**OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Gary Green, Commissioner.

R.L., in pro. per., for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Brent C. Woodward, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]        Before Gomes, Acting P.J., Kane, J. and Franson, J.

R.L. (mother) in propria persona seeks an extraordinary writ from the juvenile court's orders terminating her reunification services at a six- and 12-month review hearing and setting a Welfare and Institutions Code section 366.26[1] hearing as to her four youngest children; an 11-year-old son K.L., an eight-year-old daughter A.F. and three-year-old twin son and daughter ("the twins"). Mother asks this court to reconsider the evidence and to direct the juvenile court to either return the children to her custody or continue reunification services. We conclude her petition fails to comport with the procedural requirements of California Rules of Court, rule 8.452[2] and dismiss the petition.

## PROCEDURAL AND FACTUAL SUMMARY

Mother has seven children; three sons, now 15-year-old R.W., 14-year-old L.W. and 13-year-old I.W. and the four subjects of this writ petition. Robert W. (Robert) is the father of R.W., L.W. and I.W. Tyrell F. (Tyrell) is A.F.'s father and Kenneth L. (Kenneth) is the father of K.L. and the twins. At the time of these proceedings, Kenneth lived with mother and the children, Robert was in state prison and Tyrell's whereabouts were initially unknown.

In December 2014, then 13-year-old R.W. walked into the police department and confessed to sodomizing his six-year-old sister A.F. in November 2014. A.F. told mother about the abuse the day after it happened but mother did not take any steps to protect her. Four days later, a female cousin spent the night at the family home. R.W. sexually abused her as well. R.W. stated that he sexually abused A.F. because Tyrell sexually abused him in 2009. R.W. described five incidents in which Tyrell either attempted or succeeded in sodomizing him.

---

[1]     All statutory references are to the Welfare and Institutions Code.

[2]     All rule references are to the California Rules of Court.

The Fresno County Department of Social Services (department) took the six youngest children into protective custody and the juvenile court ordered them detained. R.W. was charged and booked into juvenile hall. As the case proceeded, the children disclosed more sexual molestation. In March 2015, L.W. and I.W. revealed that Tyrell had also attempted to sodomize them. As a result, Tyrell was arrested for sexual molestation. In April 2015, A.F. disclosed that L.W. and I.W. sodomized her while mother was at work. During a therapy session, L.W. admitted molesting his sister.

Mother did not report R.W. or A.F. being sexually abused because she believed she could take care of her own family. She acknowledged, however, that she should have removed R.W. from her home as soon as she learned of the situation and reported him to the police.

In August 2015, the juvenile court exercised its dependency jurisdiction over the children and ordered mother to complete a parenting program and substance abuse evaluation, mental health and domestic violence assessments and submit to random drug testing. The court also ordered reunification services for Robert and Kenneth and ordered mother and Kenneth to begin liberal visits with the four youngest children.

In September 2015, the department filed a subsequent petition (§ 342) after mother and Kenneth engaged in a physical altercation while the children were visiting them. Mother sustained a bruised upper lip and scratches above and below her right eye and Kenneth sustained an injured finger as a result of mother biting it. Both of them refused to contact the police. The juvenile court sustained the petition and confirmed the six- and 12-month review hearing (review hearing) then scheduled for February 2016.

In its report for the review hearing, the department recommended the juvenile court terminate reunification services for all three parents. The department opined it would be detrimental to return the children to mother because she had not accepted responsibility for failing to protect them and she engaged in aggressive behavior with Kenneth. In addition, she promoted secrecy by telling the children not to discuss what

3

happened during their visits. The department also opined there was not a substantial probability the children could be returned to mother's custody with continued services. The department also reported that a paternal aunt was willing to provide L.W., I.W., K.L. and the male twin with a permanent home, and her daughter was willing to provide A.F. and the female twin with a permanent home.

After preparing its report, the department received the results of a psychological evaluation mother completed in November 2015 with Dr. Tamika London. Dr. London concluded mother did not have a mental disorder but was unlikely to benefit from reunification services within the statutory timeframe because of her lack of insight, limited empathy and poor self-awareness.

In May 2016, the juvenile court conducted a contested review hearing. Going into the hearing, mother had completed all of her court-ordered services and separated from Kenneth two weeks before the hearing. She was participating in individual therapy and there were no concerns that she was using drugs. She agreed with the department's recommendation to terminate reunification efforts for L.W. and I.W. and place them in legal guardianship but opposed its recommendation as to K.L., A.F. and the twins.

Social worker Dana Stennis testified the four youngest children would not be safe returning to mother's custody because she had not done enough to create a safe environment where the children could communicate openly about what was going on with them. In addition, A.F. expressed concern about mother's inappropriate behavior during visitation. Mother told A.F. that the care providers were keeping her from being able to come home and mother used derogatory language when referring to them.

Mother testified she learned ways to identify and prevent sexualized behavior among children and believed she would be able to prevent the kind of abuse that A.F. experienced. She believed the children would be safe if returned to her care and she had developed a safety plan. At night, A.F. and the twins would sleep in her room with her and K.L. would sleep on the couch.

4

The juvenile court found it would be detrimental to return the children to either parent's custody and the department provided reasonable reunification services. The court further found mother's progress was moderate, noting she made improper comments to A.F. as recently as April 2016, had not demonstrated greater insight into the trauma the children suffered and the role she played and encouraged A.F. to keep secrets. On the same evidence, the court found there was not a substantial probability the children could be returned to mother's custody in the month remaining before the 18-month statutory limitation on services. Consequently, the court terminated reunifications services and set a section 366.26 hearing.

Mother filed an extraordinary writ petition (rule 8.450) and appeared for oral argument.

## DISCUSSION

Mother admits in her writ petition she failed to protect the children and takes responsibility. She acknowledges the children needed to communicate openly with her and she denied them the opportunity. She did not understand that her behavior was harming the children but realizes it now. She has moved in with her father and believes she has made progress. She does not want to lose her parental rights and asks for a chance to demonstrate that she can protect the children. Notably, mother does not assert that the juvenile court erred in ruling as it did.

As a general proposition, a juvenile court's rulings are presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Thus, absent a showing of error, this court will not disturb them. A parent seeking review of the juvenile court's orders from the setting hearing must, as mother did here, file an extraordinary writ petition in this court on form JV-825 to initiate writ proceedings. The purpose of writ proceedings is to allow this court to review the juvenile court's orders to identify any errors before the section 366.26 hearing occurs. Rule 8.452 requires the petitioner to identify the error(s) he or she believes the juvenile court made. It also requires the petitioner to support each

5

error with argument, citation to legal authority, and citation to the appellate record. (Rule 8.452(b).)

Mother left blank the designated space on the JV-825 that required her to identify the grounds on which the juvenile court erred. In addition, she did not allege any error in the five-page, handwritten statement she attached to the petition.

Real party in interest urges this court to deny mother's petition as facially inadequate because it does not comport with rule 8.452. We do have that discretion and will exercise it in this case. Mother petitions this court to reevaluate the evidence on which the juvenile court ruled in the hope that she would receive custody of the children or continued reunification services. However, it is not our role to reevaluate the evidence. Our role is to determine whether substantial evidence supports the juvenile court's decisions. When the petitioner does not challenge the court's decisions, as is the case here, there is nothing to review.

Further, even if we were to review the juvenile court orders that resulted in the setting of the section 366.26 hearing, we would find no error. The dependency statutes authorize the juvenile court to provide up to 18 months of reunification services from the date the child was initially removed from parental custody. (§ 361.5, subd. (a)(3).) The statutes also require the court to conduct review hearings at six-month intervals and return the child to the parent's custody unless it would be detrimental to do so. (§§ 366.21, subds. (e) & (f); 366.22, subd. (a)(1).)

In this case, the juvenile court was authorized to extend mother's reunification services to June 2016 because the children were initially removed in December 2014. The first actual review hearing occurred in May 2016 as a combined six- and 12-month review. The court found that it could not return the children to mother because she had not yet demonstrated she could protect them from the horrendous sexual abuse that occurred in her home. Further, there was only one month before the 18-month limitation on services and in order to continue services to that point, the juvenile court had to find

6

mother was not provided reasonable services or there was a substantial probability the children could be returned to her in the remaining month. (§ 361.5, subd. (a)(3).) Mother's attorney argued the department was unreasonable for not offering her family therapy and the court rejected that argument. Further, mother's overall lack of progress in creating a safe home environment for the children and Dr. London's opinion she was unlikely to benefit from services supports the juvenile court's finding the children would not be returned to her within a month. On this evidence, the juvenile court had no choice but to terminate mother's reunification services and set a section 366.26 hearing.

In light of our conclusion mother has failed to assert any error by the juvenile court, we dismiss the petition as facially inadequate for review.

## DISPOSITION

The petition for extraordinary writ is dismissed. This opinion is final forthwith as to this court.

7